**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **STEPHANIE FRANKLIN** | |
| Plaintiff | |
| **V.** | Civil Case No. 1:24-CV-12532 |
| **DRAPER AND KRAMER, INCORPORATED; FERNWOOD PROPERTY MANAGEMENT, LLC.** | Hon. Georgia N. Alexakis |
| Defendants | |

## <u>AMENDED COMPLAINT</u>

1.  Plaintiff, Stephanie Franklin (hereinafter "plaintiff" or "Mrs. Franklin"), by and through their undersigned counsel, hereby file this Amended Complaint against Draper and Kramer Incorporated  and Fernwood Property Management, LLC, and allege as follows:

### I.   INTRODUCTION

2.  This action arises from Defendants' discriminatory and retaliatory conduct against Plaintiff, an African American woman and Chicago Housing Authority (CHA) program participant, including harassment, breach of lease terms, unauthorized entries to her apartment, interference with her quiet enjoyment, and providing false rental verification information that prevented her from securing alternative housing.

3.  Defendants engaged in this conduct after Plaintiff refused to sign a modified lease that would have eliminated her contractual parking rights, and in retaliation for her complaints about discriminatory treatment.

4.     Through this action, Plaintiff seeks to vindicate her rights under the Fair Housing Act, 42 U.S.C. § 3601 et seq., Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Illinois Human Rights Act, and related state law claims.

## II.     PARTIES

5.     Plaintiff Stephanie Franklin is an African American woman residing at 2111 S. Wabash Avenue, Unit 2203, Chicago, Illinois 60616. She is a participant in the CHA Housing Choice Voucher Program.

6.     The defendant Draper And Kramer, Incorporated (Draper and Kramer) is an Illinois corporation with its principal place of business at 208 So Lasalle St, Suite 814, Chicago, IL 60604-1101. It operates as a property management company. For the purposes of this lawsuit, Draper and Kramer managed the property known as Aspire Residences, located at 2111 S. Wabash Avenue, Chicago, IL 60616, from February 28, 2022, to November 7, 2023.

7.     The defendant Fernwood Property Management, LLC (Fernwood) is an Illinois corporation with its principal place of business at 323 S King Dr, Chicago, IL 60616-0000. It operates as a property management company. Since November 8, 2023, he has been the manager of the property known as Aspire Residences, located at 2111 S. Wabash Avenue, Chicago, IL 60616.

## III.     JURISDICTION AND VENUE

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 42 U.S.C. § 3613 (Fair Housing Act), and 28 U.S.C. § 1367 (supplemental jurisdiction).

9.      Venue is proper in this district under 28 U.S.C. § 1391(b) as all events giving rise to these claims occurred in Chicago, Illinois, within this judicial district, and all Defendants conduct business in this district.

### IV.      THE LAWS INVOLVED
### Fair Housing Act [42 U.S.C. § 3604(a) and (b)]

10.     The Fair Housing Act (FHA) prohibits discrimination in the terms, conditions, or privileges of the rental of a dwelling, as well as in the provision of services or facilities related to such dwelling, on the basis of race or color. 42 U.S.C. § 3604(a) and (b).

11.     It is unlawful to discriminate against any person in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604(b).

12.     The FHA prohibits Defendants from discriminating against the Plaintiff based on her race (African American) and her status as a participant in the Chicago Housing Authority (CHA) program. 42 U.S.C. § 3604.

13.     Under the FHA, Defendants are prohibited from denying or restricting access to the same benefits and services offered to other tenants. 42 U.S.C. § 3604(b).

14.     The FHA also prohibits Defendants from imposing different terms and conditions in the provision of services or the use of facilities based on race or the Plaintiff's status as a CHA housing program participant. 42 U.S.C. § 3604(b).

15.     Housing discrimination under the FHA extends beyond denial of rental opportunities and includes obstruction, restrictions, harassment, retaliation, and disparate treatment that interfere with the Plaintiff's right to peacefully enjoy her residence. 42 U.S.C. § 3604(a) and (b).

**Civil Rights Act of 1866 [42 U.S.C. § 1981]**

16. Section 1981 prohibits racial discrimination in the making and enforcement of contracts. The lease agreement constitutes a contract within the meaning of Section 1981.

17. Section 1981(a) states that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. It further establishes that all individuals shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

18. Section 1981(b) defines "make and enforce contracts" to include the making, performance, modification, and termination of contracts, as well as the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

19. Section 1981(c) protects these rights from impairment due to nongovernmental discrimination and impairment under color of State law.

**Illinois Human Rights Act [775 ILCS 5/3-102]**

20. The Illinois Human Rights Act (IHRA) prohibits discrimination in real estate transactions based on race and source of income.

21. Section 3-102 of the IHRA establishes that it is a civil rights violation for an owner, any other person, a real estate broker, or a real estate salesperson to engage in the following conduct due to unlawful discrimination, familial status, immigration status, source of income, or an arrest record:

22. Refusing to engage in a real estate transaction, denying access to real property, or discriminating in the availability of such a transaction. Altering the terms, conditions, or

privileges of a real estate transaction or the provision of facilities or services related thereto. Refusing to receive or failing to transmit a bona fide offer in a real estate transaction. Refusing to negotiate a real estate transaction with a person.

23. The law also prohibits falsely representing that a property is not available for inspection, sale, rental, or lease when it is in fact available. It further prohibits failing to inform a person about the availability of a property or refusing to allow them to inspect the property.

24. The IHRA prohibits the publication or dissemination of any advertisement, notice, statement, or application form that indicates a preference, limitation, or discrimination based on unlawful discrimination, familial status, immigration status, source of income, or an arrest record.

25. Additionally, it is illegal to offer, solicit, accept, use, or retain a real estate listing with knowledge that unlawful discrimination is intended. The use of selection criteria or methods that result in discrimination is also a violation of the law unless they are necessary to achieve a substantial, legitimate, and non-discriminatory interest, and provided that such an interest cannot be achieved through another practice with a less discriminatory effect.

## V.     FACTUAL ALLEGATIONS

### A.  The lease agreement and initial pattern of discrimination by Draper and Kramer, Incorporated

26. On February 28, 2022, the plaintiff entered into a written lease agreement with D&K Real Estate Service Corp., a subsidiary of Draper and Kramer, for Unit 2203 at 2111 S. Wabash Avenue, Chicago, Illinois 60616 (hereinafter, "the Property").

27. The monthly rent under the lease agreement is $1,753.00, fully paid by the Chicago Housing Authority (CHA) through its Housing Choice Voucher Program.

28. The lease includes a provision granting parking at no additional cost, as evidenced by the blank line in the parking section of the lease agreement.

29. Around March 7, 2022, shortly after the plaintiff moved in, Draper and Kramer, through its employees, refused to honor and comply with the lease provision regarding parking, forcing the plaintiff to seek an alternative parking option at a cost of $280 per month.

30. When the plaintiff presented her lease agreement at the building's front desk, showing that she was entitled to free parking, Draper and Kramer staff acknowledged the provision but instructed her to use the visitor parking "until this was resolved."

31. Subsequently, management refused to honor the original lease terms and demanded that the plaintiff sign a new lease removing the parking benefit. This demand was formalized through a letter sent on March 21, 2022, in which the plaintiff was requested to sign a modified lease agreement altering the conditions regarding her parking space.

32. Upon information and belief, non-African American tenants and tenants not participating in the CHA program were not subjected to similar demands to modify their lease terms.

33. After refusing to sign the modified lease, Draper and Kramer initiated a pattern of harassment and retaliation against the plaintiff, which included, but was not limited to unauthorized entries into her apartment, physical intimidation by multiple employees, interference with building services and amenities, discriminatory treatment in the delivery of packages, and false reports regarding her rental history.

34. On March 25, 2022, Draper and Kramer employees engaged in a particularly egregious incident of harassment when the plaintiff ordered a self-assembly couch to be delivered to her unit.

35. When FedEx attempted delivery, management blocked the package from being delivered.

36. As a result, the plaintiff attempted to retrieve her package in the mail area, but Kaylee Stiheler, a Draper and Kramer employee, physically blocked her from leaving the area.

37. At that moment, Stiheler demanded that the plaintiff sign a new lease, followed her down the hallway while making various demands, and, despite the plaintiff repeatedly asking her to stop the harassment, she refused.

38. As a result of this incident, the plaintiff required emergency medical attention, which is documented in the 911 call record, paramedics' response, police report, and subsequent medical treatment.

39. Draper and Kramer repeatedly violated the plaintiff's privacy and security through unauthorized entries into her apartment.

40. Additionally, on January 5, 2023, Draper and Kramer allowed a leasing agent to enter the plaintiff's unit with two prospective tenants, falsely listing her unit as vacant, forcing the plaintiff to file a police report.

41. In early spring of 2023, four Draper and Kramer employees, wearing COVID masks, appeared at the plaintiff's door without notice. They acted intimidating, banging aggressively on her door.

42. This incident was witnessed by Mr. Bobbie, a former resident, who also overheard staff planning to "get her out of here" before the incident took place.

43. During the summer of 2023, Draper and Kramer deliberately obstructed Mrs. Franklin's access to building amenities.

44. The plaintiff planned a private gathering and inspected the grill area in preparation. Upon learning of this, management—then under Draper and Kramer's control—immediately removed the grill knobs after Mrs. Franklin's inspection.

45. This incident was captured on building security cameras, and the front desk concierge confirmed the sequence of events after reviewing the footage.

46. Only after the plaintiff filed a complaint were the grill knobs returned.

47. When the plaintiff obtained an accommodation for an emotional support animal in April 2023, the harassment from Draper and Kramer escalated.

48. Unauthorized entries into her unit increased, and management staff and employees of this defendant repeatedly made derogatory comments about her.

49. This led to the imposition of additional obstacles in accessing building amenities.

50. Other discriminatory actions included initial refusal to repair a faulty toilet, delays in replacing a malfunctioning refrigerator, refusal to compensate for food and medication loss due to the refrigerator's failure, selective enforcement of building rules against her and excessive monitoring and scrutiny of her visitors and companions.

**B. Pattern of harassment and retaliation by Fernwood Property Management, LLC**

51. On November 8, 2023, Fernwood Property Management, LLC informed the plaintiff that, as of that date, they would be the new property managers of Aspire Residences. Additionally, they notified Mrs. Franklin that many former employees of Draper and Kramer would be joining Fernwood's team.

52. Subsequently, on March 6, 2024, the plaintiff noticed an unoccupied apartment on her floor, facing east, and inquired at the leasing office about its availability.

53. There, she met with Rick Smartt, a leasing consultant for Fernwood Property Management, LLC, and specifically requested a tour of the unit, identifying it as either Unit 2204 or 2206.

54.  Mr. Smartt informed the plaintiff that the unit was not available for rent nor for a showing. When the plaintiff requested further clarification, Mr. Smartt reiterated that the unit could not be shown and instead offered her other units, which she declined.

55.  Later that same day, the plaintiff accessed the Aspire Residences website to check for available rental units. To her surprise, the same unit she had inquired about with Mr. Smartt was listed as available for self-guided tours. The plaintiff scheduled a self-guided tour for March 7, 2024, and was able to visit the unit by obtaining an access key fob from the building concierge.

56.  During the tour, she confirmed that the unit was indeed the one she had requested to see with Mr. Smartt and that it had more square footage than her current apartment.

57.  At that moment, the plaintiff realized that Mr. Smartt had misrepresented the unit's availability and had used false or deceptive tactics to prevent her from leasing it. This incident, combined with prior harassment, caused the plaintiff significant emotional distress.

58.  Additionally, the plaintiff has been subjected to a systematic pattern of harassment, including multiple incidents involving animal control authorities.

59.  In one of these incidents, which occurred on March 26, 2024, after spending the entire week inside her apartment, the plaintiff briefly left to go shopping. Upon returning, she found an animal control vehicle parked outside and a notice posted on her door. The notice stated that a complaint had been received regarding the welfare of her pet and that her dog would be seized if the officers returned.

60.  Alarmed, the plaintiff immediately approached the animal control officers before they left, requesting that they inspect her apartment and evaluate her dog in her presence.

61. The officers explained that the complaint alleged that her dog was abandoned, malnourished, and that her apartment was unsanitary, with dog feces and urine all over. However, after conducting the inspection with the plaintiff present, the officers confirmed that all allegations were completely unfounded. Furthermore, they noted that the photos and videos submitted with the complaint did not match the plaintiff's dog or her apartment.

62. The plaintiff has reason to believe that Fernwood maintenance staff were the ones who submitted these photos and videos to animal control personnel when making the complaint. This incident caused the plaintiff severe emotional distress and further reinforces the pattern of harassment and retaliation she has suffered at the hands of Fernwood, the current managers of Aspire Residences.

63. The incident documented under case number SR24-00549659 further supports this pattern of harassment. In that case, animal control officers responded to a similar complaint but mistakenly inspected Unit 2203. The tenant of that unit allowed access, and the officers confirmed that her dog was in excellent condition and that there were no issues in the apartment.

64. Subsequently, it was identified that the correct unit was Unit 2103, where the owner explained that his nine-month-old puppy was under veterinary care, vaccinated, and kept in a crate during work hours.

65. In the Work Order Summary Report dated March 26, 2024, case number SR24-00549659, it is detailed that the individuals who filed the complaint were employees of the administration, which is managed by Fernwood.

66. In September 2024, a Fernwood maintenance worker entered the plaintiff's unit without prior notice, informing her that the unit was listed as vacant. After filing a complaint about

this incident, the plaintiff's electronic key fob was deactivated, requiring police intervention for her to regain access to her home.

67. On January 8, 2025, at approximately 8:00 p.m., Fernwood management personnel persistently knocked on the plaintiff's door outside of business hours. The plaintiff, without opening the door, asked how she could assist them. The management personnel responded that they needed to deliver documents in person. The plaintiff informed them that any communication should go through her attorney. However, management insisted that they had to deliver the documents directly, despite there being no life or property emergency to justify contact outside business hours.

68. On January 11, 2025, the plaintiff reported that, despite having previously informed Aspire Residences staff and management that any concerns should be directed to her attorney, the office manager, Tiffany Walker, continued to visit her unit and knock on her door without justification.

69. The plaintiff does not understand the reason for these persistent attempts to contact her, as she has no outstanding debts with management, given that her rent is fully covered by the Chicago Housing Authority (CHA).

70. Additionally, the plaintiff stated that she has not received utility bills in several months. Previously, the CHA deposited the utility allowance onto a debit card, which tenants used to pay their utility bills directly. However, that system was discontinued, and CHA now pays the utility providers directly, meaning that Aspire Residences has no legitimate reason to contact her regarding past due balances or payments.

71. Despite these clarifications, the unauthorized entry by maintenance staff, the inconsistencies in unit availability, the unfounded allegations, and the repeated visits by

management personnel to the plaintiff's unit outside of business hours reflect a pattern of harassment and retaliation that has directly impacted the plaintiff. Furthermore, the misrepresentation of the availability of the unit the plaintiff sought to visit further reinforces a broader pattern of disparate treatment and retaliation by Fernwood, further violating the plaintiff's rights as a tenant.

### C. Additional discriminatory actions: discriminatory treatment and differential services

72. Defendants, Draper and Kramer Incorporated and Fernwood Property Management, LLC treated Plaintiff differently from non-African American and non-CHA tenants as follows: They blocked the delivery of large packages directly to her door, while allowing delivery to other tenants. They subjected Plaintiff to continuous monitoring and excessive scrutiny. Additionally, they interfered with her right to peacefully enjoy the premises. They also attempted to unilaterally modify the terms of her lease.

73. Upon information and belief, these practices specifically targeted Plaintiff based on her race (African American), status as a CHA program participant, and her exercise of rights under the lease.

**COUNT I**
**Violation of Fair Housing Act - Discrimination [42 U.S.C. § 3604(a) and (b)]**

74. Plaintiff realleges and incorporates paragraphs 1 - 77 as if fully set forth herein.

**Actions of Draper and Kramer, Incorporated**

75. The Fair Housing Act prohibits retaliation against any person who has exercised rights protected under the law. Draper and Kramer, Incorporated violated this provision by retaliating against Plaintiff after she exercised her rights by refusing to sign a discriminatory lease modification, filing complaints about discriminatory treatment, and reporting unauthorized entries into her unit.

76. Draper and Kramer's refusal to honor the terms of the lease agreement, specifically regarding the provision of free parking, constitutes unlawful interference with Plaintiff's rights under the FHA. The company's attempt to unilaterally modify the lease placed Plaintiff at a disadvantage compared to other tenants who were not subjected to similar modifications.

77. When Plaintiff declined to sign the modified lease, Draper and Kramer engaged in a pattern of harassment and retaliation, including unauthorized entries into her unit, physical intimidation by employees, and interference with essential building services and amenities. These actions were intended to deter Plaintiff from asserting her rights and constitute prohibited retaliation under the FHA.

78. Draper and Kramer further interfered with Plaintiff's ability to receive goods and services on equal terms by blocking package deliveries and selectively enforcing building rules to restrict her access to certain amenities. This conduct not only deprived Plaintiff of her right to peacefully enjoy her residence but also demonstrated disparate treatment based on her race and status as a Chicago Housing Authority (CHA) participant.

79. The company's retaliatory actions had a direct impact on Plaintiff's emotional well-being and security, violating the FHA's protections. The harassment extended beyond direct actions against Plaintiff and included the dissemination of false information about her rental history, which hindered her ability to secure alternative housing. These intimidation tactics, aimed at punishing Plaintiff for exercising her rights, constitute unlawful interference with her right to housing.

80. Draper and Kramer's actions also amount to denial of equal housing opportunity. The company imposed contract modifications and punitive measures that were not applied to

non-African American tenants or those not participating in the CHA program. The imposition of additional barriers to her continued residence and punitive actions following her complaints demonstrate an intentional violation of the FHA and the use of retaliation as a means of discouraging the exercise of rights protected by law.

### Actions of Fernwood Property Management, LLC

81. Fernwood Property Management, LLC also violated the FHA by continuing the pattern of harassment and retaliation against Plaintiff after assuming management of the property. The company's refusal to allow her to inspect an available unit within the building constitutes an instance of disparate treatment based on her race and status as a CHA tenant, thereby violating her rights under the FHA.

82. The misrepresentation of the availability of rental units and the refusal to allow Plaintiff to inspect a vacant unit are deliberate efforts to limit her housing opportunities compared to other tenants. The FHA prohibits the use of deceptive practices to exclude or limit housing options for protected individuals.

83. Fernwood further engaged in intimidation and harassment tactics, including filing false reports with animal control authorities in an effort to create additional difficulties for Plaintiff. These actions not only caused her emotional distress but also represent an intentional attempt to interfere with her right to peacefully enjoy her residence.

84. The use of administrative harassment tactics, such as deactivating her key fob access and repeated after-hours visits by management staff, are part of an ongoing pattern of FHA-prohibited retaliation. These actions were designed to create instability and deter Plaintiff from continuing to assert her rights as a protected tenant.

85. Fernwood's interference with Plaintiff's rights, its creation of a hostile housing environment, and its imposition of unwarranted obstacles to her peaceful enjoyment of her residence constitute clear violations of the FHA. The company leveraged its authority as property manager to retaliate against Plaintiff, restricting her rights in response to her complaints about discriminatory treatment.

86. As a direct result of Draper and Kramer's and Fernwood's actions, Plaintiff has suffered severe emotional distress, disruption to her daily life, and a loss of security and stability in her home. These are precisely the harms that the FHA seeks to prevent by prohibiting retaliation against individuals who exercise their rights under the law.

87. The violations committed by Draper and Kramer and Fernwood amount to unlawful interference with Plaintiff's right to fair housing, an attempt to restrict her housing opportunities on discriminatory grounds, and retaliation for her refusal to accept unfair and discriminatory lease modifications. Accordingly, Plaintiff seeks relief for the damages suffered as a result of these violations.

**COUNT II**
**Violation of Civil Rights Act of 1866 [42 U.S.C. § 1981]**

88. Plaintiff realleges and incorporates paragraphs 1 - 91 as if fully set forth herein.

**Actions of Draper and Kramer, Incorporated**

89. Section 1981 prohibits racial discrimination in the making, enforcement, modification, and termination of contracts, ensuring that all persons, regardless of race, have the same rights to contract and enjoy all benefits, privileges, terms, and conditions associated with a contractual relationship. The lease agreement between Plaintiff and Draper and Kramer constitutes a contract within the meaning of Section 1981, and Plaintiff is entitled to equal treatment in its enforcement and modification.

90. Draper and Kramer violated Plaintiff's contractual rights under Section 1981 by refusing to honor the contractual parking provision included in her lease. Instead of upholding the lease agreement, Draper and Kramer attempted to coerce Plaintiff into signing a modified lease agreement that would eliminate her parking rights, a condition that was not imposed on non-African American tenants or tenants who were not CHA participants. This constitutes racially motivated interference with Plaintiff's right to enforce her contract under equal terms as white citizens.

91. The company further engaged in contractual interference and retaliation by creating hostile living conditions aimed at pressuring Plaintiff into accepting the modified lease terms. This included unauthorized entries into her apartment, physical intimidation by staff members, interference with essential building services, and selective enforcement of building policies that disadvantaged Plaintiff in comparison to other tenants. Such actions constitute intentional racial discrimination in the performance and enforcement of her lease contract, violating Section 1981.

92. Draper and Kramer's interference with Plaintiff's contractual rights extended beyond her tenancy at Aspire Residences. By providing false information about her rental history, the company sabotaged her ability to secure alternative housing, directly impairing her contractual opportunities. Section 1981 explicitly protects individuals from race-based impairment in contracting opportunities, including attempts to prevent the formation of new contracts.

93. The denial of equal contractual benefits and privileges, including restrictions on her ability to receive deliveries, selective enforcement of rules against her, and the deliberate obstruction of her access to building amenities, constitutes disparate treatment in the

enforcement of her lease contract. These actions deprived Plaintiff of the full and equal benefit of her contract, which Section 1981 guarantees to all individuals regardless of race.

94. The harassment and intimidation directed at Plaintiff were not applied to non-African American tenants or those who did not participate in the CHA program, reinforcing the racial motivation behind Draper and Kramer's conduct. Section 1981 prohibits treating Black individuals differently in the enforcement of contracts, yet Draper and Kramer imposed unique burdens and created unjustified obstacles in Plaintiff's tenancy that were not applied to other tenants.

95. As a result of these discriminatory practices, Plaintiff suffered economic harm, emotional distress, and diminished housing opportunities, all of which are direct consequences of Defendants' intentional racial discrimination in violation of Section 1981.

**Actions of Fernwood Property Management, LLC**

96. Fernwood Property Management, LLC continued the pattern of contractual interference and racial discrimination initiated by Draper and Kramer. Upon assuming management of Aspire Residences, Fernwood misrepresented the availability of an apartment unit, denying Plaintiff the opportunity to enter into a new lease agreement while making that same unit available to others. This selective withholding of contractual opportunities based on race violates Plaintiff's rights under Section 1981.

97. The company further engaged in discriminatory contract enforcement by submitting false complaints to animal control, accusing Plaintiff of neglecting her pet in an attempt to disrupt her tenancy. These actions were aimed at creating a hostile living environment that would pressure Plaintiff into vacating her unit, a tactic not employed against non-African

American tenants. Such conduct constitutes race-based interference with her contractual right to quiet enjoyment of her home.

98. The deactivation of Plaintiff's key fob access and repeated after-hours visits from management were additional tactics employed to harass Plaintiff and create obstacles to the continued enjoyment of her lease contract. These actions represent unwarranted impairments to the full benefit of her contract, further violating Section 1981.

99. The persistent pattern of retaliation, deception, and intimidation used by Fernwood to restrict Plaintiff's ability to enforce her lease contract underscores the racial discrimination at the core of their actions. By targeting Plaintiff, an African American woman and CHA participant, with adverse treatment that was not applied to other tenants, Fernwood engaged in intentional racial discrimination in the enforcement of her contract, violating Section 1981.

100. As a direct result of Defendants' actions, Plaintiff has suffered economic harm, emotional distress, and severe disruption to her housing stability. These damages are precisely the harms that Section 1981 seeks to prevent by guaranteeing equal contractual rights to all individuals, regardless of race.

101. Defendants' actions constitute an intentional and willful violation of Section 1981, depriving Plaintiff of equal contractual protections, subjecting her to racially motivated burdens, and obstructing her ability to secure and enforce housing contracts on equal terms with white citizens. Accordingly, Plaintiff seeks all remedies available under the law for these violations.

## COUNT III
## Illinois Human Rights Act Violation [775 ILCS 5/3-102]

102.  Plaintiff realleges and incorporates paragraphs 1 - 105 as if fully set forth herein.

### Actions of Draper and Kramer, Incorporated

103.  The Illinois Human Rights Act (IHRA) prohibits discrimination in real estate transactions based on race and source of income. Draper and Kramer, Incorporated violated this law by discriminating against Plaintiff in the enforcement of her lease agreement due to her race and her participation in the Chicago Housing Authority (CHA) program.

104.  Draper and Kramer unlawfully altered the terms and conditions of the real estate transaction by refusing to honor the contractual provision for free parking, which was included in Plaintiff's lease agreement. The administration attempted to unilaterally modify the contract to eliminate this benefit, constituting a violation of Section 3-102 of the IHRA, which prohibits modifying the terms of a real estate transaction based on race or source of income.

105.  After Plaintiff refused to accept the discriminatory modification, Draper and Kramer created a hostile housing environment, subjecting her to unauthorized entries, intimidation by staff, and selective restrictions on access to building services and amenities. These actions violate the IHRA by interfering with her right to fair and equal housing conditions.

106.  Draper and Kramer further discriminated against Plaintiff by interfering with her housing opportunities, disseminating false information about her rental history, which impaired her ability to secure alternative housing. Section 3-102 of the IHRA prohibits any action that restricts a person's access to a real estate transaction based on race or source of income.

107.  The company obstructed Plaintiff's ability to enjoy her housing on equal terms by selectively enforcing building policies, restricting package deliveries, and limiting her use

of common areas, making her residence less habitable. These actions constitute a clear violation of the IHRA, which prohibits interference with a person's housing rights based on discriminatory reasons.

108. Plaintiff was subjected to treatment that was not imposed on non-African American tenants or tenants who did not participate in the CHA program. The IHRA prohibits the unequal application of conditions in a real estate transaction and the selective imposition of restrictions that disadvantage individuals based on their race or source of income.

**Actions of Fernwood Property Management, LLC**

109. Fernwood Property Management, LLC continued the discriminatory practices initiated by Draper and Kramer by imposing unjustified restrictions on Plaintiff's ability to access housing opportunities. The company's refusal to allow her to inspect an available apartment while permitting self-guided tours for other tenants constitutes a clear violation of the IHRA, which prohibits falsely representing that a property is unavailable when it is, in fact, available.

110. The misrepresentation of unit availability and the refusal to allow Plaintiff to inspect a vacant apartment were deliberate attempts to interfere with her ability to access housing on equal terms, restricting her from participating in a real estate transaction in violation of Section 3-102 of the IHRA.

111. Fernwood also engaged in harassment and intimidation tactics, including filing false complaints with animal control authorities, with the intent to undermine her housing stability. These actions were designed to interfere with her right to peaceful enjoyment of her residence, constituting a violation of the IHRA.

112. The deactivation of Plaintiff's key fob access and repeated after-hours visits by management staff were further examples of a pattern of harassment intended to restrict her ability to exercise her housing rights. These actions unlawfully interfered with her ability to safely and peacefully reside in her home, violating the IHRA.

113. Discrimination based on Plaintiff's participation in the CHA program also constitutes a violation of the IHRA. The company imposed additional unjustified barriers and restrictions on her tenancy that were not applied to tenants who did not rely on CHA assistance.

114. As a result of these actions, Plaintiff suffered emotional distress, loss of housing stability, and economic hardships stemming from the discrimination. The IHRA explicitly prohibits this type of retaliation and harassment, ensuring that all individuals have access to real estate transactions on equal terms.

115. The actions of Draper and Kramer and Fernwood constitute intentional and willful violations of the IHRA, depriving Plaintiff of equal housing opportunities and subjecting her to discriminatory barriers in the enforcement of her lease agreement. Accordingly, Plaintiff seeks all available legal remedies to redress these harms.

## VI.    JURY TRIAL DEMANDED

116. Plaintiff requests jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for:

A.    Enter judgment in her favor on all counts.

B.    Award compensatory damages against Draper and Kramer, Incorporated in the amount of $40,720, including but not limited to:

1. Reimbursement of $6,720 for additional parking costs directly caused by Draper and Kramer, Incorporated's refusal to honor the lease terms.

2. Compensation for property damage and loss resulting from Draper and Kramer, Incorporated's conduct.

3. Recovery of $10,000 for lost housing opportunities proximately caused by Draper and Kramer, Incorporated's unlawful actions.

4. Emotional distress damages directly attributable to Draper and Kramer, Incorporated's intentional discrimination, harassment, and retaliation.

5. Compensation for $10,000 in medical expenses incurred as a direct result of the distress and harm caused by Draper and Kramer, Incorporated.

6. Other consequential damages directly resulting from Draper and Kramer, Incorporated's conduct.

C. Award compensatory damages against Fernwood Property Management, LLC in the amount of $35,360, including but not limited to:

1. Reimbursement of $3,360 for additional parking costs directly caused byFernwood Property Management, LLC's refusal to honor the lease terms.

2. Compensation for $7,000 for property damage and loss resulting from Fernwood Property Management, LLC's conduct.

3. Recovery for $8,000 for lost housing opportunities proximately caused by Fernwood Property Management, LLC's unlawful actions.

4. Emotional distress damages directly attributable to Fernwood Property Management, LLC's intentional discrimination, harassment, and retaliation.

5.  Compensation for $8,000 for medical expenses incurred as a direct result of the distress and harm caused by Fernwood Property Management, LLC.

6.  Other consequential damages directly resulting from Fernwood Property Management, LLC's conduct.

D.  Award punitive damages against Draper and Kramer, Incorporated in the amount of $250,000.

E.  Award punitive damages against Fernwood Property Management, LLC in the amount of $250,000.

F.  Enter declaratory judgment that Draper and Kramer, Incorporated's actions violated the Fair Housing Act, Civil Rights Act of 1866, and Illinois Human Rights Act.

G.  Enter declaratory judgment that Fernwood Property Management, LLC's actions violated the Fair Housing Act, Civil Rights Act of 1866, and Illinois Human Rights Act.

H.  Grant injunctive relief requiring Fernwood Property Management, LLC to:

1.  Cease and desist from further acts of discrimination, retaliation, and harassment against Plaintiff.

2.  Honor the lease terms as originally agreed upon, including the provision of parking rights.

3.  Take corrective action regarding any false rental verifications that have harmed Plaintiff's housing opportunities.

4.  Implement fair housing training for management and staff to prevent future violations.

5.  Establish policy changes and monitoring procedures to ensure compliance with fair housing laws.

I.    Award Plaintiff costs and reasonable attorneys' fees.

J.    Award pre-judgment and post-judgment interest as permitted by law.

K.    Grant such other relief as the Court deems just and proper.

Dated: February 24, 2025

**VELEZ LAW GROUP LLC**
*Civil Rights Division*

s/José Carlos Vélez Colón
Lic. José C. Vélez Colón
USDC-NDIL 18913

4204 Six Forks Rd, Apt 1209
Raleigh, NC 27609-6427

Email.:         vlg@velezlawgroup.com
Tel.:           (787)-422-1881

***ATTORNEY FOR PLAINTIFF***