UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE FRANKLIN,<br><br>  Plaintiff,<br><br>  v.<br><br>DRAPER & KRAMER, INC. and FERNWOOD PROPERTY MANAGEMENT, LLC,<br><br>  Defendants. | No. 24 CV 12532<br><br>Judge Georgia N. Alexakis |

**ORDER**

Stephanie Franklin, now proceeding pro se, sues Draper and Kramer, Inc., the former manager of Aspire Residences, and Fernwood Property Management, LLC, the current manager of Aspire Residences, for racial and source-of-income discrimination and retaliation in violation of the Fair Housing Act, the Civil Rights Act of 1866, and the Illinois Human Rights Act. Fernwood moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6). As explained below, the Court grants Fernwood's motion. [23]. In addition, for the reasons set forth below, the Court grants Franklin's motion for leave to proceed in forma pauperis [63] and denies her motion for attorney representation [64].

**STATEMENT**

*Background*

Franklin alleges violations of the Fair Housing Act, 42 U.S.C. § 3604(a), (b), the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Illinois Human Rights Act, 775 ILCS 5/3-102. Based on the facts alleged, the Court understands Franklin to assert the following claims against Fernwood: first, under the FHA, retaliation and intentional discrimination based on race and source of income, [16] at ¶¶ 74–87; second, under § 1981, retaliation and discrimination based on race and source of income, *id.* at ¶¶ 88–101; and third, under the IHRA, discrimination based on race and source of income, *id.* at ¶¶ 102–115.

*Legal Standard*

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion,

the plaintiff need only allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court assumes that the facts alleged in the complaint are true and draws all reasonable inferences from those facts in the plaintiff's favor. *See Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.*

### *Intentional Discrimination*

Because discrimination claims under § 1981, the FHA, and the IHRA have similar requirements, the Court analyzes all of Franklin's discrimination claims—based on race and source of income, and brought under all three statutes—together. They are all dismissed for the same reason: The complaint does not plausibly allege that Fernwood acted with discriminatory intent.

Section 1981 gives "[a]ll persons … the same right … to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a). A § 1981 claim has three elements: (1) plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) defendants' activities concerned the contracting activities protected by § 1981. *See Jacobeit v. Rich Twp. High Sch. Dist. 227*, 673 F. Supp. 2d 653, 660 (N.D. Ill. 2009).

The FHA makes it unlawful to "refuse to sell or rent … or otherwise make unavailable or deny, a dwelling to a person," or to "discriminate against any person in the … privileges of sale or rental of a dwelling," "because of race" or other protected characteristic. 42 U.S.C. §§ 3604(a), (b). For an action to have been "because of race," it must be the result of discriminatory intent (i.e., "disparate treatment") or have a disproportionately adverse effect on protected groups (i.e., "disparate impact"). *Bell v. Pappas*, Case No. 22 C 7061, 2024 WL 1702691, at *3 (N.D. Ill. Apr. 19, 2024) (citing *County of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 966 (N.D. Ill. 2015)). Franklin does not attempt to bring a disparate impact claim, so she must plausibly allege that Fernwood's actions had a discriminatory intent. *See, e.g.*, *Williams v. Village of Hazel Crest*, 22 C 6069, 2023 WL 3981302, at *3 (N.D. Ill. June 13, 2023) (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (holding, in a Title VII case, that "[a] disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive")); *TBS Grp., LLC v. City of Zion*, No. 16-cv-5855, 2017 WL 5129008, at *5 (N.D. Ill. Nov. 6, 2017).

The IHRA makes it unlawful to "deny real property"; "[a]lter the terms, conditions or privileges of a real estate transaction"; or falsely "[r]epresent to a person

that real property is not available" "because of [racial] discrimination … [or] source of income." 775 ILCS 5/3-102. Because of its similarity to the FHA, courts construe the IHRA in light of the FHA's analogous provisions. *Castillo v. Dep't of Hum. Rts.*, 2014 IL App (1st) 130373-U, at ¶ 26 (2014) ("In interpreting the Act … , we may consider judicial interpretations of section 3604 of the federal Fair Housing Act … , a provision similar in language and intent to the Act.") (citing *Turner v. Hum. Rts. Comm'n*, 177 Ill. App. 3d 476, 487 (1988)). So, to succeed on her IHRA claim, Franklin must plausibly allege Fernwood's discriminatory intent, just as she must to succeed on her FHA claim.

Putting all this together, Franklin's discrimination claims—whether based on race or source of income, and whether arising under § 1981, the FHA, or the IHRA—can succeed only if she makes factual allegations that support a plausible inference that Fernwood intended to discriminate against her. She has not, so they cannot.[1]

"Plaintiffs alleging race discrimination need not provide great detail to state a claim." *See Walton v. First Merchs. Bank*, 772 Fed. App'x 349, 350 (7th Cir. 2019) (citing *Swanson v. Citibank*, 614 F.3d 400, 405 (7th Cir. 2010)); *see also Herndon v. Hous. Auth. of S. Bend, Indiana*, 670 F. App'x 417, 418 (7th Cir. 2016) (finding that plaintiff alleged sufficient facts to state a claim of racial discrimination under the FHA, because "once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim.") (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 782 (7th Cir. 2007)). Still, the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (also citing *Swanson*, 614 F.3d at 404–05). And conclusory allegations are not enough. *See, e.g.*, *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, 498 F. App'x 620, 623 (7th Cir. 2012) ("A.B. cannot state a claim through conclusory allegations that the Housing Authority's 'purported reasons for threatening to evict A.B. and his mother are illegal or pretextual, and only a cover for discrimination against A.B.'s mother as an individual with a handicap,' and that it 'favored tenants in situations similar to A.B. and his mother by not evicting those tenants'").

It is generally sufficient to allege that someone not part of the protected class was treated differently. *See, e.g.*, *Wigginton v. Bank of Am. Corp.*, 770 F.3d 521, 522

---

[1] Because Franklin hasn't plausibly alleged that Fernwood intended to discriminate against her, the Court needn't analyze whether Fernwood's alleged conduct is of the kind prohibited by § 1981, the FHA, or the IHRA. There are three ways relevant to this case in which a landlord's conduct could run afoul of those statutes. First, it could prevent someone from renting, buying, or moving into a dwelling in the first place. *See Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009). Second, it can act in such a way as to make it impossible for someone to continue living in a dwelling. *Bloch*, 587 F.3d at 776, 779. These are sometimes referred to as "constructive eviction" claims. *See, e.g.*, *Wetzel*, 901 F.3d at 866. Third, it can engage in or allow harassment that is so severe or pervasive that it creates a hostile housing environment. *Id.* at 861.

(7th Cir. 2014) ("It does not take much to allege discrimination, … but one essential allegation is … that someone else has been treated differently."); *Douglas v. Alfasigma USA, Inc.*, No. 19-CV-2272, 2021 WL 2473790, at *13 (N.D. Ill. June 17, 2021) (holding that plaintiffs "alleged … enough facts to support their claim" of racial discrimination, when they alleged "that their similarly situated white colleagues" received better treatment). But even then, the plaintiff must allege facts showing that she has some basis for knowing how those others were treated. *Walton*, 772 Fed. App'x at 351.

The complaint here describes four incidents involving Fernwood. It does not plausibly allege that any of them involved discriminatory intent.

*First*, it alleges that, just shy of five months after Fernwood took over management of the building, Franklin asked management about the availability of a larger unit across the hall from hers. [16] at ¶ 52. A leasing consultant told her that it wasn't available, *id.* at ¶ 55, but she was able to go online to schedule a self-guided tour, which she took the next day, *id.* To pass muster, the complaint needs to allege some indicator of discriminatory intent, but it does not. It doesn't allege that *anyone*—in a protected class or not—was treated differently. *See Wigginton*, 770 F.3d at 522. Nor does it allege, for example, that any Fernwood employees used racist language or comments that "carried the stain of racial animus." *See Watters v. Homeowners' Ass'n at the Pres. at Bridgewater*, 48 F.4th 779, 786 (7th Cir. 2022) (in context, a reference to "you people" supported an inference of intentional discrimination).

*Second*, the complaint alleges that, about three weeks after the apartment-tour incident, animal control officers told Franklin that someone had complained about the welfare of her dog. [16] ¶ 59. After inspecting her apartment, the officers determined that the complaint was unfounded. *Id.* ¶ 61. They also told her that the photos submitted with the animal-control complaint did not match her dog or apartment. *Id.* Then, in a separate incident not involving Franklin, animal control officers responded to another complaint but mistakenly inspected the wrong unit, finding a healthy dog. *Id.* ¶ 63. The officers later inspected the correct unit and found yet another healthy dog. *Id.* ¶ 64. Nothing about these allegations supports a plausible inference of discriminatory intent. The complaint does not identify other people who were treated differently. To the contrary, it alleges that multiple people received the same treatment. *Id.* ¶¶ 63–64.

*Third*, the complaint alleges that, about six months after the apartment-tour and animal-control incidents, a Fernwood maintenance worker entered Franklin's unit without prior notice and told her that the unit was listed as vacant. *Id.* ¶ 66. After Franklin complained about this incident (presumably with Fernwood, although the complaint does not specify), her key fob was deactivated, and Franklin had to call the police to get her back into her apartment. *Id.* The complaint provides no other

4

factual allegations about this incident, much less any that could support an inference of discriminatory intent.

Finally, the complaint alleges that, three months after the maintenance-worker incident, a Fernwood staff member knocked on Franklin's door at around 8:00 p.m. to deliver some papers. *Id.* ¶ 67. Franklin told them to give the papers to her attorney, *id.*, and reported three days later that the office manager "continued to visit her unit and knock on her door," *id.* ¶ 68. Again, the complaint contains no other facts supporting a plausible inference of discriminatory intent.

Certainly, the complaint paints a picture of a less-than-ideal living situation. But beyond that, it offers only legal conclusions: that the apartment-tour incident "constitutes an instance of disparate treatment based on [Franklin's] race," *id.* ¶ 81, and a "selective withholding of contractual opportunities based on race" in violation of § 1981, *id.* ¶ 96; that "violations committed by … Fernwood amount to … an attempt to restrict her housing opportunities on discriminatory grounds," *id.* ¶ 87; that Fernwood's "actions were aimed at creating a hostile living environment … , a tactic not employed against non-African American tenants" and constitute "race-based interference with her contractual right to quiet enjoyment of her home," *id.* ¶ 97; and that Fernwood "target[ed] [Franklin], an African American woman and CHA participant," and therefore "engaged in intentional racial discrimination in the enforcement of her contract, violating § 1981," *id.* ¶ 99. But as already explained, conclusory allegations aren't enough. *See, e.g.*, *Carlson*, 758 F.3d at 827; *Williams*, 2023 WL 3981302, at *3. When it comes to discriminatory intent, the complaint simply does not allege enough *facts* to "nudge[ ] [Franklin's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Walton*, 772 Fed. App'x at 351 (holding that two allegations that white customers were not mistreated, without other factual support, did not support an inference of discriminatory intent).

Franklin argues that these "specific adverse actions … constitute a pattern of targeted conduct rather than isolated incidents" and thus support an inference of discriminatory intent. [32] at 11–12. But this conflates the elements of a discrimination claim: conduct and intent. Although conduct alone may support an inference of intent, as when there's no obvious non-discriminatory reason for the treatment, a plausible discrimination claim usually requires some additional factual content to support a reasonable inference of discriminatory intent. *See Walton*, 772

5

Fed. App'x at 350–51. The conduct here—even considered in the aggregate—simply does not on its own support an inference of discriminatory intent.[2]

Franklin also argues that the legal conclusions contained in her complaint are sufficient to state a claim under *Swanson*, 614 F.3d at 405, and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). [34-1] at 3. She rightly points out that *Swierkiewicz* held that a plaintiff need not plead facts that would make out a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because the prima facie case is an evidentiary standard, not a pleading requirement. 534 U.S. at 510–11. Franklin, however, still needs to satisfy Rule 8's pleading standard as explained in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. Under that standard, legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 555 U.S. at 680.

*Swanson* does not say, in contravention of *Iqbal*, that recitations of legal conclusions like those in Franklin's complaint are sufficient to state a claim; rather, a complaint—that is, its "well-pleaded facts," *Iqbal*, 556 U.S. at 679—must identify "the type of discrimination … , by whom … , and when." *Swanson*, 614 F.3d at 405. Without the legal conclusions, "which may be disregarded on a motion to dismiss," *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011), the complaint does not do so. It describes four incidents involving Fernwood, *see generally* [16] ¶¶ 51–71, but does not allege that anyone involved in any of those incidents acted with discriminatory intent, *see id.* ¶¶ 51–71. The remaining "well-pleaded facts" thus "do not permit the court to infer more than the mere possibility of misconduct" by Fernwood. *Iqbal*, 556 U.S. at 679.[3]

There is a separate problem with Franklin's source-of-income discrimination claims. Section 1981 protects against discrimination based on race, 42 U.S.C. § 1981, and the FHA protects against discrimination based on "race, color, religion, sex,

---

[2] The Court notes that Franklin purports to quote *Swanson*, 614 F.3d at 405, in support of this argument. But the quote that she attributes to that case does not exist—in any case. [32] at 11. A few paragraphs later, Franklin cited *McReynolds v. Merrill Lynch*, 694 F.3d 873, 886 (7th Cir. 2012), in support of a proposition that is not discussed in that case. [32] at 11–12. The Court recognizes that Franklin's former attorney, rather than Franklin herself, filed the opposition to Fernwood's motion to dismiss. Still, it cautions Franklin to carefully read the authorities she relies upon and to avoid the careless use of generative artificial intelligence, which frequently mischaracterizes cases and even creates quotations or case citations seemingly from thin air.

[3] It may be helpful to illustrate the difference between a factual allegation and a legal conclusion. For example, Franklin alleges that Draper and Kramer—another defendant the claims against which are not the subject of this opinion—required her to modify her lease but did not require any non-African American tenants to do the same. [16] ¶ 32. This is a factual allegation that the Court could consider in determining whether Franklin stated a claim against Draper and Kramer. On the other hand, Franklin's assertion that "[t]he company's refusal to allow her to inspect an available unit within the building constitutes an instance of disparate treatment based on her race," *id.* ¶ 81, is a legal conclusion that can be disregarded when determining whether the complaint states a claim, *McCauley*, 671 F.3d at 617.

6

familial status, or national origin," 42 U.S.C. § 3406(a). Neither statute protects against discrimination based on source of income. Source-of-income discrimination is thus not cognizable under § 1981 or the FHA.

Because the amended complaint does not plausibly allege that Fernwood acted with discriminatory intent, Franklin's racial discrimination claims brought under § 1981, the FHA, and the IHRA, and her source-of-income discrimination claim brought under the IHRA, are dismissed without prejudice. Because source-of-income discrimination is not cognizable under § 1981 or the FHA, Franklin's source-of-income discrimination claims brought under those statutes are dismissed with prejudice.

*Retaliation*

Franklin alleges that Fernwood retaliated against her in violation of the FHA and § 1981. Retaliation claims under the FHA and § 1981 have three elements: (1) the plaintiff engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two. *Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 958 (7th Cir. 2024) (§ 1981); *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018) (FHA, 42 U.S.C. § 3617).

Franklin repeatedly characterizes the apartment-tour, animal-control, maintenance-worker, and staff-member incidents as a continuation of a "pattern of retaliation" that was "initiated" by Draper and Kramer after Franklin refused to sign a modified lease. *Id.* ¶¶ 31, 33, 81. But there is no causal link between that refusal and the incidents involving Fernwood. Causation can be inferred from circumstances such as suspicious timing or different treatment of similarly situated individuals. *See Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). A gap of more than two months, however, is too great to support an inference of causation. *Abrego*, 907 F.3d at 1015 (holding, in a Title VII case, that there was no causal link when gap between protected activity and adverse action was 47 days).

Here, there is a gap of nearly five months between when Fernwood replaced Draper and Kramer as the manager of Franklin's building and the date of the first alleged incident involving Fernwood (the apartment-tour incident). And the gap between the apartment-tour incident on March 6, 2024, [16] ¶ 52, and Franklin's refusal to sign the modified lease on March 21, 2022, which allegedly triggered the "pattern of retaliation," *id.* ¶ 31–33, is nearly two years. That gap in time is just too long to support an inference of causation; it is so long that it affirmatively supports an inference that there is no causation. *See Kedas v. Ill. Dep't of Trans.*, 149 F.4th 951, 959 (7th Cir. 2025) (holding that lack of temporal proximity militated against causation when the gap was 22 months).

7

Franklin also argues that her formal complaint about the maintenance-worker incident, [16] ¶ 66, is a protected activity. [32] at 9; [34-1] at 5. It is not. At the pleading stage, to show that her complaint was a protected activity, Franklin must allege facts plausibly suggesting that she reasonably and in good faith believed that the action she opposed—here, the maintenance-worker incident—violated civil rights laws. *Evans v. Civitas Educ. Partners, LLC*, 22 C 3842, 2024 WL 4449988, at *3 (N.D. Ill. Oct. 9, 2024). But as discussed above, there are *no* factual allegations indicating—either directly or circumstantially—that Franklin's race had anything to do with the incident. And the maintenance-worker incident happened after a six-month incident-free period, *see* [16] ¶¶ 59–66, which precludes any inference that this incident was at all related to any others. *Cf. Abrego*, 907 F.3d at 1015. Absent allegations suggesting that the maintenance-worker incident involved discriminatory intent or had any connection to other alleged incidents, Franklin's complaint about it cannot constitute protected activity. *Cf. Clark Cnty. Sch. Dis. v. Breeden*, 532 U.S. 268, 271 (2001) (holding that no reasonable person could have believed that the isolated incident at issue violated the law because it could not "remotely be considered 'extremely serious,'" as our cases require) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)).

Because Franklin has not plausibly alleged a causal link between Fernwood's alleged conduct and any protected activity, her retaliation claims are dismissed without prejudice.

### *Motions To Proceed IFP and for Attorney Representation*

Franklin's motion to proceed in forma pauperis [63] is granted. Her motion for attorney representation [64] is denied without prejudice.

There is no right to court-appointed counsel in federal civil cases, but the Court may recruit a lawyer to represent an indigent litigant on a volunteer basis under 28 U.S.C. § 1951(e)(1). *Watts v. Kidman*, 42 F.4th 755, 760–61 (7th Cir. 2022) (*citing Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)). In deciding whether to recruit counsel, the court must engage in a two-step analysis, asking: (1) whether the plaintiff has made a reasonable attempt to retain counsel on her own or been effectively precluded from doing so; and, if so, (2) whether given the factual and legal complexity of the case, the plaintiff appears competent to litigate the matter herself. *Pruitt*, 503 F.3d at 654–55. The analysis does not focus solely on the plaintiff's ability to try the case but takes into consideration his ability to gather evidence and prepare and respond to motions. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013). Factors to be considered include: (1) the stage of litigation, *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010); (2) plaintiff's submissions to date, *Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014); (3) plaintiff's physical and mental health, *id.*; (4) plaintiff's education level, communication skills, and litigation experience, *Pruitt*, 503 F.3d at

655; and (5) the complexity of the case, *id.* at 655-56. The Court also considers the merits of a plaintiff's claim. *See Watts*, 42 F.4th at 766.

After considering the above factors, the Court concludes that solicitation of counsel is not currently warranted. Although Franklin has unsuccessfully attempted to retain counsel since her previous counsel withdrew from this matter, she has some college education. [64]. In addition, based on plaintiff's pleadings, the underlying facts here appear to be within her personal knowledge, meaning that, in the Court's estimation, plaintiff can proceed on her own at this stage of the case. Should the case proceed to a stage where the need for counsel is more pressing, such as trial, plaintiff may renew her motion for recruited counsel.

In the meantime, Franklin is encouraged to make an appointment at the Hibbler Help Desk, a free self-help assistance program that is available to pro se parties, by following this link: https://hibbler-memorial-pro-se-assistance-program.appointlet.com or calling the Clerk's Office at (312) 435-5691. Additional information for self-represented parties is available on the District's website (https://www.ilnd.uscourts.gov), through the link for Information for People without Lawyers (https://www.ilnd.uscourts.gov/Pages.aspx?page=ProSe).

## CONCLUSION

For the foregoing reasons, Franklin's motion to proceed in forma pauperis [63] is granted, and her motion for attorney representation [64] is denied without prejudice. Fernwood's motion to dismiss Franklin's claims against it [23] is granted. The source-of-income discrimination claims under § 1981 and the FHA are dismissed with prejudice. The remaining claims are dismissed without prejudice.

As to the claims being dismissed without prejudice, Franklin may refile an amended complaint if she can cure the deficiencies identified above while still complying with her obligations under Federal Rule of Civil Procedure 11. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."); *Eberhardt v. Walsh*, 122 F.4th 681, 686 (7th Cir. 2024) ("Rule 11 imposes certain duties on attorneys and *pro se* parties."). Any amended complaint is due on or before November 14, 2025. Failure to file an amended complaint by that date will result in dismissal of all claims against Fernwood with prejudice.

Date: October 31, 2025

Georgia N. Alexakis
United States District Judge